THORNER (AHL v.). See Case No. 103.

THORNHILL v. BANK OF LEE. See Cases Nos. 13,990–13,992.

---

## Case No. 13,990.

THORNHILL et al. v. BANK OF LOUISIANA.

. WILLIAMS et al. v. SAME.

[3 N. B. R. 435 (Quarto, 110)[1] 3 Am. Law T. 38; 2 Chi. Leg. News, 157; 1 Am. Law T. Rep. Bankr. 156.]

District Court, D. Louisiana. Jan. 11. 1870.[2]

BANKRUPTCY — STATE INSOLVENCY — BANKS — FORFEITURE OF CHARTER—ASSETS.

1. A bank, incorporated under the laws of the state of Louisiana, became insolvent, and the attorney-general of the state of 1868 proceeded in a state court at the instance and by request of the bank, and thereupon a decree was rendered forfeiting its charter, and directing its affairs to be wound up in accordance with the insolvent laws of the state. In 1869, creditors of the bank petitioned to have its assets surrendered and administered upon in bankruptcy, and were opposed by the state insolvent commissioners. Held, the state laws relating to insolvency, insolvent debtors, etc., were superseded on the 1st of June, 1867, by the bankruptcy act of 1867 [14 Stat. 517].

[Disapproved in Re New Amsterdam Fire Ins. Co., Case No. 10,140. Cited in Globe Ins. Co. v. Cleveland Ins. Co., Id. 5,486.]

2. The state court had no jurisdiction in the premises except to the extent of decreeing a forfeiture of the bank charter when its jurisdiction ended.

3. It was the duty of the directors of the bank, upon learning its insolvency, to have taken proceedings to surrender its assets to be administered upon under the United States bankruptcy act.

4. The fact that the bank was extinct, as a corporation, and its assets being administered upon under decree of the state court, and according to state laws, at the time of creditors filing said petition in bankruptcy does not affect the jurisdiction of the United States bankruptcy court, and it will lay hold of the assets of the bank, in whosesoever hands they may be, and distribute

---

[1] [Reprinted from 3 N. B. R. 435 (Quarto, 110), by permission.]

[2] [Affirmed in Case No. 13,992.]

the same in accordance with the provisions of the bankruptcy act.

5. Judgment rendered and decree entered accordingly.

[These were suits by John Thornhill and others and Sarah Williams and others against the Bank of Louisiana.]

Cooley & Phillips, for petitioning creditors.

DURELL, District Judge. These suits were brought by certain creditors of the Bank of Louisiana, with the intent of forcing said bank to make a surrender of its assets to be administered upon, under and in accordance with the provisions of an act entitled "An act to establish a uniform system of bankruptcy throughout the United States." The questions at issue have been twice argued before the court; first in the month of June last, and again a few days before the last adjournment for the holidays. The arguments made by counsel were very able, and I have given to the questions mooted much consideration.

The facts involved are these: In 1868, about one year before the filing of the petition in the first of these suits, the Bank of Louisiana, through its president, took steps for the liquidation of its affairs, under certain statutes of the state touching the liquidation of insolvent corporations. The bank applied, by petition, to one of the courts of the state for an order, calling a meeting of its stockholders, to be held before one of the notaries public of the city, for the purpose of voting upon the question of the propriety of a surrender of its charter; the bank alleging, in said petition, that it was insolvent; that its property was being seized by creditors; and that unless a surrender of its charter were made, and its assets administered upon as in a case of insolvency, the most vigilant creditor would be the most favored, contrary to the policy of the law of the state. Subsequently, and but a few months after the taking of this action, the attorney-general of the state, at the instance and by the request of the bank, instituted suit in the Sixth district court of New Orleans, for and in behalf of the state and against the bank, praying for a decree of forfeiture of its charter. The attorney-general, in his petition, alleged, as the bank had before alleged, that the bank was insolvent, that its affairs were daily growing to a worse condition, and that for the protection of its creditors, and for an equitable distribution of its assets, a decree of forfeiture of its charter should be rendered, the corporation dissolved, and its property placed in the possession of commissioners appointed by the court, to be administered in accordance with the provisions of the insolvent laws of the state. A decree was rendered in accordance with the prayer of the attorney-general's petition, and three commissioners, appointed also in answer to said prayer,

have now, for more than eighteen months, and for more than one year prior to the application made here by Thornhill for a forced surrender, been in possession of, and administering upon, the assets of the bank, as in a case of insolvency. In the month of May last, Thornhill and others, creditors of the bank, believing that its assets might be better and more equitably administered upon under the provisions of an act entitled "An act to establish a uniform system of bankruptcy throughout the United States," approved March 2, 1867, applied by petition to this court, sitting in bankruptcy, for an order requiring said bank, its president and directors, and said commissioners, to surrender all of the assets of said bank to be administered upon in this court, as in a case of forced surrender in bankruptcy. The commissioners alone oppose the application. In answer to the petition of Thornhill et al., they say: 1st. That the bank is dead; its charter having been taken from it by the decree of a court of competent jurisdiction, more than a year before Thornhill put on file his petition for a forced surrender. 2d. That the property of the bank is now being properly administered upon under state laws for such purposes long since made and provided.

The 8th section of the constitution of the United States provides, among other things, that "congress shall have power to establish uniform laws on the subject of bankruptcies throughout the United States." On the 2d of March, 1867, congress, in pursuance of the power thus granted, enacted the law entitled "An act to establish a uniform system of bankruptcy throughout the United States," being chapter 76 of the second session of the 39th congress. The 37th section of said act reads as follows: "And be it further enacted, that the provisions of this act shall apply to all moneyed, business, or commercial corporations, and joint stock companies; and that, upon the petition of any officer of any such corporation or company, duly authorized by a vote of a majority of the corporators, at any legal meeting called for the purpose, or upon the petition of any creditor or creditors, of such corporation or company, made and presented in the manner hereinafter provided, in respect to debtors, the like proceedings shall be had and taken as are hereinafter provided in the case of debtors. And all the provisions of this act which apply to the debtor, or set forth his duties in regard to furnishing schedules and inventories, executing papers, submitting to examinations, disclosing, making over, secreting, concealing, conveying, assigning, or paying away his money or property, shall in like manner, and with like force, effect, and penalties, apply to each and every officer of such corporation or company, in relation to the same matters concerning the corporation or company, and the money and property thereof. All payments, convey-

ances, and assignments, declared fraudulent and void by this act, when made by a debtor, shall, in like manner, and to the like extent, and with like remedies, be fraudulent and void when made by a corporation or company. No allowance or discharge shall be granted to any corporation or joint-stock company, or to any person, or officer, or member thereof: Provided, that whenever any corporation, by proceedings under this act, shall be declared bankrupt, all its property and assets shall be 'distributed to the creditors of such corporations, in the manner provided in this act in respect to natural persons." Now, this act, under the provisions of its 50th section, came into full force and effect on the 1st day of June, 1867, one year before the attorney-general of the state, acting at the instance and request of the bank, asked for a judicial forfeiture of its charter. If, then, the president and directors of the bank had, at the time they instigated action on the part of the attorney-general, come to the conclusion that the bank was hopelessly insolvent, and that its property should be administered upon as in cases of insolvency, what was it their duty to do? It was, most assuredly, to have made a surrender of the property of the corporation over which they presided, into this court sitting in bankruptcy, to be passed upon as in cases of voluntary surrender under the act. At the time action was taken by the attorney-general for a forfeiture of the charter of the bank; at the time of the rendering of the decree of forfeiture by the court taking jurisdiction of the same; and at the time of the appointment of the commissioners who now have possession of the property of the bank, and who here oppose the proceedings of Thornhill and his associates, all statutes of the state of Louisiana touching proceedings in insolvency, insolvent debtors, insolvent corporations, were superseded, and made to be of no effect, by the enactment of the act of March 2, 1867, establishing a uniform system of bankruptcy. The Sixth district court of the city of New Orleans had jurisdiction of the action taken by the attorney-general, as far as the forfeiture of the charter was concerned; but with the decree of forfeiture its jurisdiction ended. It could not go on and administer upon the property of the bank as the property of an insolvent corporation, for the insolvent laws of the state touching corporations, by virtue of which the court could alone act. were no longer in force.

It has been said by counsel for the commissioners that, inasmuch as the bank expired. or became extinct as a corporation at the date of the forfeiture of its charter. no being now exists contradictorily with whom these proceedings can be taken. But this court. looking to the interests of creditors, and to an equitable distribution among them of the property of their debtors, in accordance with the provisions of the bankrupt act,

will lay hold of such property wherever it can find it; and persons in possession of the same, whether claiming in open wrong, or under a show of title, are parties proper to be made defendants in proceedings of this character. Were it otherwise, any corporation might escape the regime of the bankrupt act by a simple dissolution or surrender of its charter.

Judgment is therefore rendered in favor of the petitioners in these cases, and a decree will be entered in accordance with the several prayers on file.

[NOTE. Within 10 days from the date of the above decree, a petition of review was filed by the commissioners in the circuit court, and that court entered a decree affirming the orders and decrees of the district court. Case No. 13,992. Application was immediately made by the commissioners for an appeal to the supreme court, which was refused by the circuit judge, but was subsequently granted by one of the associate justices of the supreme court, more than 10 days, however. from the date of the decree of the circuit court. It was contended that the appeal subsequently allowed operated as a supersedeas from the date of the first application, and a decree was made by the circuit court that all orders in this cause subsequent to the 21st of January, 1870, be vacated and annulled. Case No. 13,991. After the appeal was filed in the supreme court, the appellees filed a motion to dismiss the same for the want of jurisdiction. The motion was granted. 11 Wall. (78 U. S.) 65.]